FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2013 JAN 18  PM 12: 18

LORETTA G. WHYTE
CLERK



# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

### INDICTMENT FOR CONSPIRACY,
### HONEST SERVICES WIRE FRAUD, BRIBERY CONCERNING PROGRAMS
### RECEIVING FEDERAL FUNDS, MONEY LAUNDERING, AND
### FILING FALSE TAX RETURNS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.:** 13-011 |
| **v.** | * | **SECTION:** SECT. C MAG. 5 |
| **C. RAY NAGIN** | * | **VIOLATION:** 18 U.S.C. § 371 |
| **a/k/a "Mayor Nagin"** | | 18 U.S.C. § 1343 |
| | * | 18 U.S.C. § 1346 |
| | | 18 U.S.C. § 666(a)(1)(B) |
| | * | 18 U.S.C. § 2 |
| | | 18 U.S.C. § 1956(h) |
| | * | 26 U.S.C. § 7206(1) |
| | * | |
| * | * | * |

The Grand Jury charges that:

## COUNT 1
*(Conspiracy)*

## A.    AT ALL TIMES MATERIAL HEREIN:

### *City of New Orleans - Office of the Mayor*

1.    The City of New Orleans was a municipality located within the State of Louisiana and the

Eastern District of Louisiana and received federal assistance in excess of $10,000 annually between

2003 and 2011. The Mayor of New Orleans is the Chief Executive Officer for the City of New

USA.
__Fee_____
✓ Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No._____

Orleans, and is empowered with the authority to control the use of administrative and executive powers on behalf of the City of New Orleans. Offices, divisions, and departments within the executive branch of city government fall within the authority and control of the Mayor.

### Defendant - C. RAY NAGIN a/k/a "Mayor Nagin"

2.      From May, 2002, until May, 2010, the defendant, **C. RAY NAGIN a/k/a "Mayor Nagin"**, served as Mayor of the City of New Orleans. In this elected position, **C. RAY NAGIN** was a public official and an agent of the City of New Orleans. As Mayor, **C. RAY NAGIN** possessed the power and authority to modify procurement practices governing the award of professional services contracts, the power and authority to award contracts, and the power and authority to provide City of New Orleans support to contractors and consultants seeking to advance their financial positions and their business interests with the City of New Orleans.

### Mayor Nagin's Company - Stone Age, LLC

3.      On or about January, 2005, defendant **C. RAY NAGIN** created Stone Age, LLC ("Stone Age"), a Louisiana corporation domiciled in New Orleans, Louisiana.

### Frank Fradella

4.      From in or near January, 2007, and continuing through in or near May, 2010, Frank Fradella ("Fradella") was a city contractor who pursued a variety of business opportunities with the City of New Orleans. At various times during this period, Fradella was the Chief Executive Officer ("CEO") and Chairman of the Board of a publicly-traded corporation, Home Solutions of America, Inc. ("HSOA"). During this same time period, Fradella and HSOA were affiliated with several local companies, to include, Home Solutions Restoration of Louisiana, Inc. ("HSRL"), Associated Contractors, LLC, and Picke Construction.

2

**_Aaron Bennett_**

5.    In or near January, 2007, Aaron Bennett ("Bennett") was affiliated with and operated several local businesses, to include, Benetech, LLC and Associated Contractors, LLC. Both companies conducted business with the City of New Orleans during **C. RAY NAGIN'S** term in office.

**_Rodney Williams_**

6.    In or near August, 2005, Rodney Williams ("Williams"), a city contractor, served as president of a local consulting firm, Three Fold Consultants, LLC ("Three Fold Consultants"). As President of Three Fold Consultants, Williams was responsible for developing new business opportunities with the City of New Orleans.

7.    On or about March 6, 2008, Williams created BRT Investments, LLC, a Louisiana corporation domiciled in New Orleans.

**_Gregory Meffert_**

8.    From May, 2002 through July, 2006, Gregory Meffert ("Meffert") served as Chief Technology Officer ("CTO") and Executive Assistant to Mayor **C. RAY NAGIN**. During this time period, Meffert reported to Mayor **C. RAY NAGIN** and managed the Mayor's Office of Technology and the Management Information Services ("MIS") department.

**_Mark St. Pierre_**

9.    From in or near August, 2002, through in or near March, 2007, Mark St. Pierre ("St. Pierre") operated as a contractor for the City of New Orleans. St. Pierre worked through the Mayor's Office of Technology and used procurement vehicles that allowed him to invoice the City of New Orleans through a number of contractors selected by Gregory Meffert and approved by **C. RAY NAGIN**. During **C. RAY NAGIN'S** tenure in office, St. Pierre operated under several corporate identities,

3

to include, Imagine Software, LLC, NetMethods, LLC, Method Investments, LLC, and Veracent, LLC.

### Businessman "A"

10.     From in or near August, 2002, through May, 2010, Businessman "A"owned and operated a movie theater in eastern New Orleans, Louisiana.

**B.     THE SCHEME AND ARTIFICE TO DEFRAUD:**

Beginning in or near June, 2004, and continuing through the date of this indictment, in the Eastern District of Louisiana and elsewhere, the defendant, **C. RAY NAGIN**, knowingly devised and intended to devise a scheme and artifice to defraud the City of New Orleans and its citizens of his honest services through a bribery and kickback scheme, whereby **Mayor Nagin** used his public office and his official capacity to provide favorable treatment that benefitted the business and financial interests of individuals providing him with bribery/kickback payoffs in the form of checks, cash, granite inventory, wire transfers, personal services, and free travel.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** awarded contracts to companies operated by Frank Fradella.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN**, as Mayor of the City of New Orleans, provided favorable treatment to Fradella by fully supporting his business proposals and financial interests.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** awarded contracts to Three Fold Consultants, a company led by city contractor, Rodney Williams.

It was further part of the scheme and artifice to defraud that Gregory Meffert advanced an Executive Order that changed the procurement procedures used by the City of New Orleans to secure

4

professional Information Technology ("IT") services.  This Executive Order, CRN 04-02, was adopted and approved by **C. RAY NAGIN**, as Mayor of the City of New Orleans, on or about June 23, 2004.  This Executive Order allowed Gregory Meffert, with the approval of **C. RAY NAGIN**, to guarantee placement of Mark St. Pierre as a "no bid" city contractor in exchange for payoffs from St. Pierre.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** accepted bribery/kickback payoffs from Mark St. Pierre, that included personal services, free travel, lodging, cellular telephone service for family members, and campaign funding.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN**, on or about May 23, 2006, accepted a bribery/kickback payoff from Businessman "A" in the form of private jet travel and limousine services to New York City.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN**, as Mayor of the City of New Orleans, on or about May 23, 2006, agreed to waive tax penalties owed by Businessman "A" on a delinquent tax bill owed to the City of New Orleans.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** accepted bribery/kickback payoffs from Aaron Bennett and Frank Fradella that included private jet travel to Chicago and Las Vegas.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN**, in or near Spring, 2008, solicited a large sum of money from city contractor, Frank Fradella.

It was further part of the scheme and artifice to defraud that Frank Fradella agreed to provide defendant **C. RAY NAGIN** with a $50,000 payoff.  To disguise the payoff, Michael McGrath

("McGrath"), a corporate board member of HSOA, used a trust account to layer and conceal the true nature of this illegal transaction.

It was further part of the scheme and artifice to defraud that McGrath, on or about June 23, 2008, deposited a personal check in the amount of $51,000 to fund a trust account in his child's name.

It was further part of the scheme and artifice to defraud that McGrath, on or about June 23, 2008, caused a $50,000 check from the trust account to be issued to defendant **C. RAY NAGIN** through his granite company, Stone Age.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN**, on or about June 30, 2008, caused the $50,000 bribery/kickback payoff check to be deposited into his Stone Age corporate account.

It was further part of the scheme and artifice to defraud that Fradella and McGrath, on or about June 17, 2008, used a Securities and Exchange Commission ("SEC") public corporate filing to disguise the payoff. The SEC public filing disguised the money flow between Fradella, McGrath, and **C. RAY NAGIN**.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** accepted a bribery/kickback payoff from Frank Fradella in the form of free granite inventory.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** accepted a bribery/kickback payoff from Frank Fradella in the form of monthly interstate wire payments of $12,500. These wire payments totaled $112,500.

6

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** accepted a bribery/kickback payoff from Rodney Williams and Three Fold Consultants in the form of three (3) separate $20,000 checks totaling $60,000.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN**, in February, 2008, selected Rodney Williams' company, Three Fold Consultants, to be a professional services consultant for the Capital Projects division of the City of New Orleans.

It was further part of the scheme and artifice to defraud that Rodney Williams, on or about March 6, 2008, created a corporation (BRT Investments, LLC) as a means to conceal the true nature of the illegal transaction.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN**, on or about April 16, 2008 and April 21, 2008, selected Rodney Williams' company, Three Fold Consultants, to be a professional services consultant for the Public Works department of the City of New Orleans.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN**, as Mayor of the City of New Orleans, on or about July 20, 2009, awarded Rodney Williams and his company, Three Fold Consultants, a City of New Orleans contract worth $1,000,000.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN**, Family Member 1, and Family Member 2, on or about July 21, 2009, accepted a bribery/kickback cash payoff arranged by Rodney Williams and Three Fold Consultants.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** accepted and agreed to accept things of value from individuals seeking his support as Mayor of New Orleans.

7

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** disguised the flow of several bribery/kickback payoffs through the use of his family-owned business, Stone Age.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** used Family Members 1 and 2 to assist the bribery scheme.

It was further part of the scheme and artifice to defraud that defendant **C. RAY NAGIN** concealed the bribery/kickback payoffs through various means.

## C. THE CONSPIRACY:

Beginning at a time unknown, but prior to in or near June, 2004, and continuing until in or near the date of this indictment, in the Eastern District of Louisiana and elsewhere, defendant **C. RAY NAGIN**, Family Member 1, Family Member 2, Frank Fradella, Michael McGrath, Aaron Bennett, Rodney Williams, Gregory Meffert, Mark St. Pierre, Businessman "A" and others, knowingly and willfully conspired, combined, and agreed together and with other persons, known and unknown to the Grand Jury:

1) to devise and intend to devise a scheme and artifice to defraud the City of New Orleans, and its citizens of their intangible right to **C. RAY NAGIN'S** honest services, through bribes and kickbacks, by use of interstate wire transmissions, in violation of Title 18, United States Code, Sections 1343 and 1346; and

2) to corruptly accept and agree to accept anything of value from any person, intending to be influenced and rewarded as an agent of an organization, government, or agency in connection with any business, transaction, and series of transactions involving anything of value of $5,000 or more of an organization, government, or agency that receives more than $10,000 under a federal program

during a one year period, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

3) to corruptly give, offer, and agree to give anything of value to any person, intending to influence and reward an agent of an organization, government, or agency in connection with any business, transaction, and series of transactions involving anything of value of $5,000 or more of an organization, government, or agency that receives more than $10,000 under a federal program during a one year period, in violation of Title 18, United States Code, Section 666(a)(2).

## D.   OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY:

In furtherance of the conspiracy and to achieve the objects thereof, the conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

1.   In or near June, 2004, defendant **C. RAY NAGIN** enacted Executive Order No. 04-02. Defendant **C. RAY NAGIN** performed this official act to empower Gregory Meffert to issue "no bid" work to city contractor, Mark St. Pierre and others.

2.   In or near December, 2004 and January, 2005, city contractor, Mark St. Pierre, through Gregory Meffert, paid lodging and vacation expenses for defendant **C. RAY NAGIN** and his family in Hawaii. At the same time, St. Pierre began providing cellular telephone services for family members of **C. RAY NAGIN**.

3.   In or near October, 2005, city contractor, Mark St. Pierre, paid for first class airfare travel to Jamaica for **C. RAY NAGIN** and his family members.

4.   In or near May, 2006, city contractor, Mark St. Pierre, hosted a fund raiser in Chicago and provided concealed and direct campaign monies to **C. RAY NAGIN** to continue receiving "no bid" city business.

5.   On or about May 23, 2006, Businessman "A," as a reward for defendant **C. RAY NAGIN'S** support on a tax penalty waiver associated with overdue tax bills and loan payments due the City of New Orleans, arranged for private jet travel and limousine services to New York City, costing approximately $23,500, for defendant **C. RAY NAGIN** and his family members.

9

6.  In or near January, 2007, Gregory Meffert, with the approval of defendant **C. RAY NAGIN**, arranged for Aaron Bennett and his company, Benetech, LLC, to become a prime contractor for the City of New Orleans and a billing mechanism for Mark St. Pierre.

7.  In or near January, 2007, defendant **C. RAY NAGIN** accepted a bribery/kickback payoff from Aaron Bennett and Frank Fradella in the form of free private jet travel to Chicago and Las Vegas.

8.  On or about January 11, 2007, defendant **C. RAY NAGIN** approved a City of New Orleans ordinance that allowed city property to be sold to a major retail corporation. At the same time, defendant **C. RAY NAGIN** solicited the same major retail corporation for a business arrangement that would personally benefit him and his family-owned granite business, Stone Age, LLC.

9.  In or near January, 2007, defendant **C. RAY NAGIN**, as Mayor of the City of New Orleans, offered to assist the major retail corporation in curtailing the efforts of a community group seeking to obtain community benefits from the major retail corporation. At the same time, defendant **C. RAY NAGIN** solicited the same major retail corporation for a business arrangement that would personally benefit him and his family-owned granite business, Stone Age, LLC.

10. On or about February 6, 2007, defendant **C. RAY NAGIN** secured a coveted granite installation vendor relationship with the same major retail corporation he assisted as Mayor of the City of New Orleans.

11. On or about February 1, 2007, Businessman "A" paid a third party for defendant **C. RAY NAGIN'S** private jet travel and limousine services to New York City as a reward for defendant **C. RAY NAGIN'S** support of a tax penalty waiver on an overdue property tax bill owed to the City of New Orleans.

12. On or about February 14, 2007, the City of New Orleans solicited responses for a sidewalk repair project in the French Quarter (Jackson Square).

13. On or about March 12, 2007, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, met with investors for Home Solutions of America, Inc. on behalf of Frank Fradella. At this meeting, defendant **C. RAY NAGIN** pledged his support for Fradella's business interests with the City of New Orleans.

14. On or about March 14, 2007, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, signed a contract worth in excess of $3,000,000 for Frank Fradella's company, HSRL, for a construction project at Louis Armstrong International Airport.

15.    On or about July 9, 2007, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, signed a contract worth in excess of $1,000,000 for Frank Fradella's company, HSRL, for a construction project at Louis Armstrong International Airport.

16.    On or about October 9, 2007, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded the French Quarter sidewalk repair contract to Frank Fradella through HSRL (d/b/a Associated Contractors, LLC).

17.    On or about November 20, 2007, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, issued a Request for Proposals ("RFP") through the Capital Projects Division for professional services related to capital improvements.

18.    On or about December 11, 2007, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, issued a Request for Proposals ("RFP") through the Public Works Department for construction management services.

19.    In December, 2007 and January, 2008, Rodney Williams, through Three Fold Consultants, LLC, submitted responses to the RFP's issued by the City of New Orleans.

20.    On or about January 11, 2008, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, publicly announced the partial completion of the sidewalk repair project which had been awarded to Frank Fradella through HSRL (d/b/a Associated Contractors, LLC) at a press conference in the French Quarter, New Orleans, Louisiana.

21.    On or about January 31, 2008, defendant **C. RAY NAGIN** accepted a $60,000 bribery/kickback payoff from Rodney Williams and Three Fold Consultants, LLC.

22.    On or about January 31, 2008, defendant **C. RAY NAGIN** transferred 4.5% interest in Stone Age, LLC, to BRT Investments, LLC (an entity incorporated by Rodney Williams) as a way to disguise the true nature of the payoff. However, BRT Investments, LLC was not registered with the State of Louisiana as a corporate entity until on or about March 6, 2008, and was created as a vehicle to conceal the true nature of the payoff.

23.    On or about February 18, 2008, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, selected Rodney Williams' company, Three Fold Consultants, LLC, to perform services for the Capital Projects Division.

24.    On or about April 16 and April 21, 2008, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, selected Rodney Williams' company, Three Fold Consultants, LLC, to perform construction management and roadway services for the Public Works Department.

11

25. On or about June 6, 2008, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (NORD Lighting project) to Rodney Williams and Three Fold Consultants, LLC.

26. On or about June 13, 2008, Rodney Williams provided a bribery/kickback payoff to defendant **C. RAY NAGIN**, Family Member 1, and Family Member 2, in the form of a $2,250 check issued to Stone Age, LLC.

27. On or about June 17, 2008, defendant **C. RAY NAGIN** accepted a bribery/kickback payoff from Frank Fradella in the form of granite inventory. The shipment originated from a facility located at 4615 North Lois Avenue, Tampa, Florida, and was sent to Stone Age, LLC, located at 9700 Palm Street, New Orleans, Louisiana.

28. On or about June 23, 2008, defendant **C. RAY NAGIN** accepted a bribery/kickback payoff from Frank Fradella, and his associate Michael McGrath, in the form of a $50,000 check drawn on an account with the Commerce Bank in Cherry Hill, New Jersey.

29. On or about August 6, 2008, defendant **C. RAY NAGIN** accepted a bribery/kickback payoff from Frank Fradella in the form of granite inventory to defendant **C. RAY NAGIN**. The shipment originated from a facility located at 4615 North Lois Avenue, Tampa, Florida, and was sent to Stone Age, LLC, located at 9700 Palm Street, New Orleans, Louisiana.

30. On or about August 20, 2008, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (Wright Road project) to Rodney Williams and Three Fold Consultants, LLC.

31. On or about October 31, 2008, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (Gentilly/Bayou Road Streetscape) to Rodney Williams and Three Fold Consultants, LLC.

32. In or near February, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, amended several City of New Orleans professional services contracts (NORD Lighting) involving Rodney Williams and Three Fold Consultants, LLC and increased the amount of monies collectible under the contracts.

33. On or about February 18, 2009, defendant **C. RAY NAGIN**, produced a redacted version of his appointment calendar in response to a Public Records Request which concealed his relationship with co-conspirators.

34.     On or about February 27, 2009, defendant **C. RAY NAGIN** enacted Executive Order 09-01. This Executive Order amended the City's procurement practice for professional services by suspending the involvement of selection review panels in the selection process. The selection review panels were originally created to promote transparency in the contractor selection process but were suspended through enactment of this Order.

35.     On or about March 19, 2009, defendant **C. RAY NAGIN** acknowledged and admitted to Special Agents of the Federal Bureau of Investigation ("FBI") that City of New Orleans employees were prohibited from receiving money or things of value from individuals seeking and/or doing business with the City of New Orleans. During this interview with Special Agents of the FBI, **C. RAY NAGIN** concealed his receipt of bribery/kickback payoffs from City of New Orleans contractors.

36.     On or about May 8, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contracts (Village De L'est project) to Rodney Williams and Three Fold Consultants, LLC.

37.     On or about May 8, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (Sam Bonart Playground project) to Rodney Williams and Three Fold Consultants, LLC.

38.     On or about May 8, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (drain retrofit project) to Rodney Williams and Three Fold Consultants, LLC.

39.     On or about May 8, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (Mosquito Control project) to Rodney Williams and Three Fold Consultants, LLC.

40.     On or about May 21, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (West End Lakeshore Park project) to Rodney Williams and Three Fold Consultants, LLC.

41.     On or about May 27, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (property management project) to Rodney Williams and Three Fold Consultants, LLC.

42.     On or about June 25, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (Engine 10 project) to Rodney Williams and Three Fold Consultants, LLC.

43.   On or about June 30, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (Engine 36 project) to Rodney Williams and Three Fold Consultants, LLC.

44.   On or about July 8, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (Kerry Curley Playground project) to Rodney Williams and Three Fold Consultants, LLC.

45.   On or about July 13, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (Harris Playground project) to Rodney Williams and Three Fold Consultants, LLC.

46.   On or about July 14, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (Lopez Street Brake Tag Station project) to Rodney Williams and Three Fold Consultants, LLC.

47.   On or about July 14, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a professional services contract (Broadmoor Multi-Service project) to Rodney Williams and Three Fold Consultants, LLC.

48.   On or about July 20, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, awarded a $1,000,000 professional services contract ("Katrina" sidewalk repair project) to Rodney Williams and Three Fold Consultants, LLC.

49.   On or about July 21, 2009, defendant **C. RAY NAGIN**, Family Member 1, and Family Member 2 accepted a $10,000 cash bribery/kickback payoff arranged by Rodney Williams and Three Fold Consultants, LLC.

50.   On or about August 27, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, amended a professional services contract (Village De L'est Playground project) for Rodney Williams and Three Fold Consultants, LLC, and increased the amount of monies collectible under the contract.

51.   On or about October 12, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, amended a professional services contract (NORD Lighting project) for Rodney Williams and Three Fold Consultants, LLC, and increased the amount of monies collectible under the contract to more than $400,000.

52.   On or about November 10, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, amended a professional services contract (NORD Lighting project) for Rodney Williams and Three Fold Consultants, LLC, and increased the amount of monies collectible under the contract.

53.     On or about November 12, 2009, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, amended a professional services contract (Sam Bonart Playground project) for Rodney Williams and Three Fold Consultants, LLC, and increased the amount of monies collectible under the contract.

54.     On or about February 4, 2010, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, amended a professional services contract (Gentilly/Bayou Road Streetscape project) for Rodney Williams and Three Fold Consultants, LLC, and extended the length of the contract.

55.     On or about February 4, 2010, defendant **C. RAY NAGIN**, on behalf of the City of New Orleans, amended a professional services contract (Engine 36 project) for Rodney Williams and Three Fold Consultants, LLC, and increased the amount of monies collectible under the contract.

56.     In or near March, 2010, Family Member 1 provided an affidavit response to the Louisiana State Ethics Commission's request for information related to Stone Age's business dealings. The Ethics Commission also requested information related to any and all ownership documentation in Stone Age, LLC since 2006. In his affidavit response, Family Member 1 indicated that Stone Age was only owned by Nagin family members.

57.     On or about July 20, 2010, defendant **C. RAY NAGIN** accepted a bribery/kickback payoff from Frank Fradella in the form of a wire transfer in the amount of $12,500.

58.     On or about July 22, 2010, defendant **C. RAY NAGIN** provided an affidavit response to the Louisiana State Ethics Commission's request for information related to Stone Age's business dealings. The Ethics Commission also requested information related to any and all ownership interests in Stone Age since 2006. The affidavit response provided by defendant **C. RAY NAGIN** failed to disclose any business dealings with Williams, Fradella, or McGrath, any ownership interest transfers of Stone Age to Williams, Fradella, or McGrath, or any monies received from Williams, Fradella, or McGrath.

59.     Beginning on or about August 13, 2010, and ending in or near March, 2011, defendant **C. RAY NAGIN** accepted bribery/kickback payoffs arranged by Frank Fradella in the form of monthly wire transfers in the amount of $12,500. The wire payments totaled $112,250.

        All in violation of Title 18, United States Code, Section 371.

### COUNT 2
### *(Bribery)*

A.      The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.      On or about January 31, 2008, in the Eastern District of Louisiana, defendant **C. RAY NAGIN**, an agent of the City of New Orleans, a municipality which received federal benefits in excess of $10,000 in a one-year period, did corruptly accept and agree to accept a thing of value from another for his benefit and the benefit of another, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of the City of New Orleans involving anything of value of $5,000 or more; that is, defendant **C. RAY NAGIN**, accepted and agreed to accept a payoff in the amount of $60,000 dollars from Rodney Williams and his company, Three Fold Consultants, LLC, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

### COUNT 3
### *(Bribery)*

A.      The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.      On or about June 13, 2008, in the Eastern District of Louisiana, defendant **C. RAY NAGIN**, an agent of the City of New Orleans, a municipality which received federal benefits in excess of $10,000 in a one-year period, did corruptly accept and agree to accept a thing of value from another for his benefit and the benefit of another, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of the City of New Orleans involving anything of value of $5,000 or more; that is, defendant **C. RAY NAGIN**, accepted and agreed to accept a

payoff in the form of a check in the amount of $2,250 from Rodney Williams, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## COUNT 4
### *(Bribery)*

A.      The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.      On or about June 17, 2008, in the Eastern District of Louisiana, defendant **C. RAY NAGIN**, an agent of the City of New Orleans, a municipality which received federal benefits in excess of $10,000 in a one-year period, did corruptly accept and agree to accept a thing of value from another for his benefit and the benefit of another, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of the City of New Orleans involving anything of value of $5,000 or more; that is, defendant **C. RAY NAGIN**, accepted and agreed to accept a payoff in the form of granite inventory from Frank Fradella, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## COUNT 5
### *(Bribery)*

A.      The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.      On or about June 23, 2008, in the Eastern District of Louisiana, defendant **C. RAY NAGIN**, an agent of the City of New Orleans, a municipality which received federal benefits in excess of $10,000 in a one-year period, did corruptly accept and agree to accept a thing of value from another for his benefit and the benefit of another, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of the City of New Orleans involving anything

17

of value of $5,000 or more; that is, defendant **C. RAY NAGIN** accepted and agreed to accept a payoff in the form of a check in the amount of $50,000 from Frank Fradella and Michael McGrath, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

### COUNT 6
### *(Bribery)*

A.    The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.    On or about August 6, 2008, in the Eastern District of Louisiana, defendant **C. RAY NAGIN**, an agent of the City of New Orleans, a municipality which received federal benefits in excess of $10,000 in a one-year period, did corruptly accept and agree to accept a thing of value from another for his benefit and the benefit of another, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of the City of New Orleans involving anything of value of $5,000 or more; that is, defendant **C. RAY NAGIN**, accepted and agreed to accept a payoff in the form of granite inventory from Frank Fradella, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

### COUNT 7
### *(Bribery)*

A.    The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.    On or about July 21, 2009, in the Eastern District of Louisiana, defendant **C. RAY NAGIN**, an agent of the City of New Orleans, a municipality which received federal benefits in excess of $10,000 in a one-year period, did corruptly accept and agree to accept a thing of value from another for his benefit and the benefit of another, intending to be influenced and rewarded in connection with

any business, transaction, and series of transactions of the City of New Orleans involving anything of value of $5,000 or more; that is, defendant **C. RAY NAGIN**, accepted and agreed to accept a $10,000 cash payoff arranged by Rodney Williams and Three Fold Consultants, LLC, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## COUNTS 8-16
### *(Honest Services Wire Fraud)*

A.     The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.     **The Use of the Wires**:

On or about the dates listed below, in the Eastern District of Louisiana, and elsewhere, Frank Fradella and defendant **C. RAY NAGIN**, for the purpose of executing the scheme and artifice as described in Count 1, and attempting to do so, did transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain signs and signals; that is Frank Fradella and defendant **C. RAY NAGIN** caused interstate wire communications to occur between Louisiana and other states on or about the dates listed below.  The interstate wire communications listed below consisted of bribery/kickback payoffs disguised as electronic wire payments to **C. RAY NAGIN**:

| COUNT | DATE | AMOUNT PAID TO C. RAY NAGIN |
|-------|------|------------------------------|
| 8 | July 20, 2010 | $12,500 |
| 9 | August 13, 2010 | $12,500 |
| 10 | September 3, 2010 | $12,500 |
| 11 | October 1, 2010 | $12,500 |
| 12 | November 1, 2010 | $12,500 |
| 13 | December 1, 2010 | $12,500 |

19

| 14 | January 3, 2011 | $12,500 |
|----|-----------------|---------|
| 15 | February 9, 2011 | $12,500 |
| 16 | March 2, 2011 | $12,500 |

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

## COUNT 17
### *(Money Laundering Conspiracy)*

A.    The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.    **The Conspiracy:**

Beginning at a time unknown, but in or near November, 2004, and continuing through in or near the date of the indictment, in the Eastern District of Louisiana, and elsewhere, defendant **C. RAY NAGIN** did knowingly and willfully combine, conspire, confederate and agree with others to engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, in violation of Title 18, United States Code, Section 1957; all in violation of Title 18 United States Code, Section 1956(h).

## COUNT 18
### *(Filing False Tax Return)*

A.    The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.    On or about April 28, 2007, in the Eastern District of Louisiana, the defendant, **C. RAY NAGIN**, a resident of New Orleans, Louisiana, did willfully make and subscribe a 2005 United States Individual Income Tax Return, Form 1040 which was verified by a written declaration that

it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said income tax return defendant **C. RAY NAGIN** did not believe to be true and correct as to every material matter in that defendant **C. RAY NAGIN** falsely reported his income to be $156,278; all in violation of Title 26, United States Code, Section 7206(1).

**COUNT 19**
***(Filing False Tax Return)***

A.      The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.      On or about, October 29, 2007, in the Eastern District of Louisiana, the defendant, **C. RAY NAGIN**, a resident of New Orleans, Louisiana, did willfully make and subscribe a 2006 United States Individual Income Tax Return, Form 1040 which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said income tax return defendant **C. RAY NAGIN** did not believe to be true and correct as to every material matter in that defendant **C. RAY NAGIN** falsely reported his income to be $170,364; all in violation of Title 26, United States Code, Section 7206(1).

**COUNT 20**
***(Filing False Tax Return)***

A.      The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.      On or about, October 24, 2008, in the Eastern District of Louisiana, the defendant, **C. RAY NAGIN**, a resident of New Orleans, Louisiana, did willfully make and subscribe a 2007 United States Individual Income Tax Return, Form 1040 which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which

21

said income tax return defendant **C. RAY NAGIN** did not believe to be true and correct as to every material matter in that defendant **C. RAY NAGIN** falsely reported his income to be $31,163; all in violation of Title 26, United States Code, Section 7206(1).

### COUNT 21
#### *(Filing False Tax Return)*

A.     The allegations contained in Count 1 are realleged and incorporated as if fully set forth herein.

B.     On or about, October 20, 2009, in the Eastern District of Louisiana, the defendant, **C. RAY NAGIN**, a resident of New Orleans, Louisiana, did willfully make and subscribe a 2008 United States Individual Income Tax Return, Form 1040 which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said income tax return defendant **C. RAY NAGIN** did not believe to be true and correct as to every material matter in that  defendant **C. RAY NAGIN** falsely reported his income to be $143,852; all in violation of Title 26, United States Code, Section 7206(1).

### NOTICE OF FRAUD FORFEITURE

1.     The allegations of Counts 1 through 16 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 371, 666(a)(2), 666(a)(1)(B), 1343 and 981(a)(1)(c), made applicable through Title 28, United States Code, Section 2461(c).

22

2.      As a result of the offenses alleged in Counts 1 through 16, defendant, **C. RAY NAGIN**, shall forfeit to the United States pursuant to Title 18, United States Code, Sections 371, 666(a)(2), 666(a)(1)(B), 1343 and 981(a)(1)(c), made applicable through Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 371, 666(a)(2), 666(a)(1)(B), and 1343.

3.      If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third person;

        c.      has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 981(a)(1)(c), made applicable through Title 28, United States Code, Section 2461(c).

## NOTICE OF MONEY LAUNDERING FORFEITURE

1.      The allegations of Count 17 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982.

2.      As a result of the offenses, alleged in Count 18, defendant **C. RAY NAGIN**, shall forfeit to the United States all property real or personal, involved in the aforesaid offenses and all property traceable to such property, including but not limited to the following property, which was involved in the said violations of Title 18, United States Code, Sections 1956(h)  and 982, or is traceable to such property.

3.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

>        a.      cannot be located upon the exercise of due diligence;
>
>        b.      has been transferred or sold to, or deposited with, a third person;
>
>        c.      has been placed beyond the jurisdiction of the Court;
>
>        d.      has been substantially diminished in value; or
>
>        e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1) to

24

seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 982.

A TRUE BILL:

FOREPERSON

DANA J. BOENTE
UNITED STATES ATTORNEY

FRED P. HARPER [6568]
First Assistant United States Attorney

DUANE EVANS [24086]
Assistant United States Attorney
Chief, Criminal Division

RICHARD R. PICKENS, II [22593]
Assistant United States Attorney

MATTHEW M. COMAN [23613]
Assistant United States Attorney
Deputy Chief, Criminal Division

New Orleans, Louisiana
January 18, 2013

FORM OBD-34

No.____

UNITED STATES DISTRICT COURT

Eastern ____ District of ____ Louisiana

Criminal ____ Division

## THE UNITED STATES OF AMERICA

vs.

C. RAY NAGIN a/k/a "Mayor Nagin"

## INDICTMENT

INDICTMENT FOR CONSPIRACY, HONEST SERVICES WIRE FRAUD, BRIBERY CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS, MONEY LAUNDERING and FILING FALSE TAX RETURNS

VIOLATIONS: 18 USC § 371, 18 USC § 1343, 18 USC § 1346, 18 USC § 666(a)(1)(B), 18 USC § 2, 18 USC § 1956(h), and 26 USC § 7206(1)

A true bill.

_____
Foreperson

Filed in open court this _____ day, of _____ A.D. 2013.

_____
Clerk

Bail, $ _____

_____
MATTHEW M. COMAN
Assistant United States Attorney