UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL ACTION

VERSUS                                                  NO. 13-11

C. RAY NAGIN                                            SECTION "C" (5)

**PRELIMINARY ORDER OF FORFEITURE**

Before the Court is the United States of America's Motion for Entry of Preliminary Order of Forfeiture. Rec. Doc. 139. The Government seeks a preliminary order of forfeiture in the amount of $501,200.56. *Id.* The Defendant, C. Ray Nagin, opposes this motion. Rec. Doc. 141. Having considered the evidence presented at trial, the law, and the submissions by both parties, the Court hereby GRANTS the Government's motion and issues the following preliminary order of forfeiture.

**I. Procedural History**

On January 18, 2013, the Grand Jury returned a true bill of indictment against Mr. Nagin. Rec. Doc. 1. The allegations of the indictment were numerous and spanned the entirety of Mr. Nagin's tenure as the Mayor of New Orleans. In brief summary: Counts 2, 3, and 7 charged Mr. Nagin with acceptance of bribes from co-conspirator Rodney Williams and his company, Three Fold Consultants, in exchange for the influence that Mr. Nagin exercised over the City's contracting process, all in violation of 18 U.S.C. § 666(a)(1)(B) and (2). Counts 4, 5, and 6 charged Mr. Nagin with acceptance of bribes, including money and granite inventory, from co-conspirators Frank Fradella and Michael McGrath, in exchange for Mr. Nagin pledging his mayoral support for Fradella's business with potential investors and the favorable exercise of the Mr. Nagin's discretion

1

in the contracting process, all in violation of 18 U.S.C. § 666(a)(1)(B) and (2). Counts 8 through 16 charged Mr. Nagin with the use of interstate wires to accept and/or conceal bribes from Mr. Fradella, thereby defrauding the City of the Mayor's honest services in violation of 18 U.S.C. §§ 1343, 1346, and 2. Count 1 charged Mr. Nagin with conspiracy to commit honest services wire fraud and/or to accept bribes in violation of 18 U.S.C. § 371, incorporating the bribes and kickbacks enumerated in Counts 2 through 16 and adding gifts not named elsewhere in the indictment. Count 17 charged Mr. Nagin with conspiring to commit a money laundering offense in violation of 18 U.S.C. § 1956(h), with respect to the overt acts described in Count 1. Counts 18 through 21 charged Mr. Nagin with filing false tax returns in violation of 26 U.S.C. § 7206(1). Mr. Nagin's indictment finally contained a notice that certain real and personal properties held by him were subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 982 and 28 U.S.C. § 2461(c) as proceeds traceable to the honest services wire fraud and bribery or involved in the money laundering charged in the indictment.

At his arraignment on February 20, 2013, Mr. Nagin entered a plea of not guilty to the indictment. Rec. Doc. 9. A jury trial was held in this matter from January 30, 2014 to February 12, 2014, during which several of the alleged co-conspirators testified and documentation of the transactions was received into evidence. At the conclusion of this trial, the jury found Mr. Nagin guilty as charged with respect to Counts 1 through 6 and 8 through 21. Rec. Doc. 127. The jury found Mr. Nagin not guilty with respect to Count 7. *Id.* Following the jury's verdict, the Court ordered that sentencing take place on June 11, 2014. Rec. Doc. 129. The instant Motion for Preliminary Order of Forfeiture was filed on April 8, 2014 and noticed for submission on April 23, 2014. Rec. Doc. 139.

**II. Applicable Laws**

With limited qualifications and few exceptions, forfeiture imposed upon a finding or verdict of guilt is a form of punishment. *United States v. Gasanova*, 332 F.3d 297, 300 (5th Cir. 2003) (citing *Austin v. United States*, 509 U.S. 602, 618, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993)). It serves the purpose of disgorging the defendant of the ill-gotten gains of his criminal behavior. *United States v. Taylor*, 582 F.3d 558, 566 (5th Cir. 2009) (quoting *United States v. Webber*, 536 F.3d 584, 602-03 (7th Cir. 2008)). "Forfeiture procedures are governed by [Fed. R. Crim. P.] 32.2." Fed. R. Crim. P. 32(k)(2). Where forfeiture is sought in an indictment, Rule 32.2 requires the court to determine the property subject to forfeiture as soon as practical after a verdict or finding of guilty on any count that authorizes forfeiture. Fed. R. Crim. P. 32.2 (b)(1)(A).

There is no master statute to govern the determination of property subject to forfeiture. *See United States v. St. Pierre*, 809 F. Supp. 2d 538, 541 (E.D. La. 2011) (Fallon, J.). Multiple overlapping statutes can apply depending on the nature of the offense. *Id.* Thus, determining the property subject to forfeiture requires consideration of the statutory basis for the forfeiture sought. *Id.* The statutory basis will determine the nexus between property and offense that the government must show in order to prove that property is subject to forfeiture. *Id.*; *see also* Fed. R. Crim. P. 32.2(b)(1)(A). The burden of proof applicable to this nexus requirement is a mere preponderance of the evidence. *Gasanova*, 332 F.2d at 300. The Government may leverage any evidence already in the record in attempting to satisfy this burden. Fed. R. Crim. P. 32.2(b)(1)(B). The Government has an unqualified right to seek forfeiture in the form of a personal money judgment against the defendant in lieu of a judgment against specific property, as it has elected to do in this case. *See* Fed. R. Civ. P. 32.2(b)(1)(A), (b)(2)(A), advisory committee notes; *see also United States v. Olguin*, 643 F.3d 384, 396-97 (5th Cir. 2011) (concluding that breadth of language mandating forfeiture under

an applicable statute implies the government's right to seek personal money judgments).[1]

The Government has noticed in the indictment, and by this motion it now seeks, forfeiture with respect to the jury's verdict of guilt on Counts 1 through 6 and 8 through 17. According to the indictment notice, the government seeks forfeiture under two separate statutory bases. First, with respect to Mr. Nagin's convictions on Counts 1 through 6 and 8 through 16 for violating 18 U.S.C. §§ 371, 666(a)(1)(B), 666(a)(2), and 1343, the government seeks forfeiture pursuant to 28 U.S.C. § 2461(c), which mandates forfeiture as part of any sentence for which criminal or civil forfeiture is authorized. The civil forfeiture statute, 18 U.S.C. § 981(a)(1)(C), in turn, authorizes the forfeiture of any property which constitutes or is derived from "proceeds traceable to" any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7) or a conspiracy to commit such an offense. Section 1956(c)(7) expressly designates the offenses listed in 18 U.S.C. § 666 as "specified unlawful activity." Section 1956(c)(7) further incorporates "racketeering activity," as defined in 18 U.S.C. § 1961(1), which includes the offense described in 18 U.S.C. § 1343. Accordingly, Mr. Nagin is liable to forfeit an amount proven by a preponderance of the evidence to equal the proceeds traceable to the offenses described in Counts 1 through 6 and 8 through 16.

Next, with respect to Mr. Nagin's conviction on Count 17 for violating 18 U.S.C. § 1956(h), the government has noticed forfeiture under 18 U.S.C. § 982(a)(1), which requires the Court to order forfeiture of property "involved in" a violation of §1956 in imposing sentence on one convicted of that offense. As such, Mr. Nagin is liable to forfeit property proven by a preponderance of the evidence to have been involved in the offense described in Count 17.

---

[1] Although *Olguin* dealt with forfeiture under 21 U.S.C. § 853, which is not at issue in this case, there is reason to believe that the same reasoning applies to the forfeiture statutes at issue in this case, given the breadth of the language mandating and/or authorizing forfeiture. In any case, Mr. Nagin has not disputed the Government's ability to seek a personal money judgment against him.

**III. Analysis**

A. Counts 1-6 & 8-16

The Government argues that Mr. Nagin is required to forfeit all of the "bribes" and "kickbacks" enumerated in Counts 1 through 6 and 8 through 16 because it constitutes the direct proceeds of his criminal behavior under § 981(a)(1)(C). Rec. Doc. 139-1 at 6.

Title 18, U.S.C. § 981(a)(2) supplies the definition of "proceeds" that applies to this argument and provides for a different definition depending on whether a case involves goods and services that are *per se* illegal or simply provided in an illegal manner. *See* 18 U.S.C. § 981(a)(2)(A)-(B). The Government argues that Counts 1 through 6 and 8 through 16 cannot be construed to involve lawful goods and services, and thus, the definition of proceeds applicable to illegal or unlawful goods and services should apply. Without question, the judgment of a public servant becomes illicit whenever it is commodified or reduced to a "good" to be leveraged for the servant's own benefit. Thus, in a sense, bribery and honest services wire fraud can never involve a "lawful good." Still, this argument misses the thrust of the inquiry used to determine whether § 981(a)(2)(A) or (B) applies. The question is whether the goods or services provided in a case could ever be provided on a lawful basis. *See United States v. Hassan*, 718 F.3d 338, 346 (4th Cir. 2013) (contrasting contraband with other goods and services that might lawfully be provided). The official mayoral activities that form the basis of Mr. Nagin's convictions were not inherently illegal; rather, it was only illegal for him to have profited or to have expected to profit from these activities - in other words, to have provided his services in a particular manner. Under these circumstances, § 981(a)(2)(B) applies. *See St. Pierre*, 809 F. Supp. 2d at 543 (applying § 981(a)(2)(B) because municipal contracting and information technology services are not of their nature unlawful enterprises).

Under § 981(a)(2)(B), "proceeds" means "the amount of money acquired through the illegal

5

transaction resulting in the forfeiture, less direct costs incurred in providing the goods or services." "Direct costs" do not include overhead expenditures. 18 U.S.C. § 981(a)(2)(B). A claimant (in this case, Mr. Nagin) has the burden of proving the existence and amount of direct costs. *Id.* The evidentiary record does not establish that there were any direct costs associated with Mr. Nagin's illicit performance of his otherwise lawful, official duties. Accordingly, this direct cost savings provision has no meaning or application to this case. Forfeiture is required for the sum total of the monetary benefit that Mr. Nagin acquired by the offenses in Counts 1 through 6 and 8 through 16. The Court now reviews the amounts requested by the Government for each count.

*1. Counts 2 through 6*

With respect to its verdict of guilty on Counts 2 through 6, the jury in this case found beyond a reasonable doubt that Mr. Nagin accepted bribe payments from Rodney Williams, Three Fold Consultants, LLC, Frank Fradella, and/or Michael McGrath, including cash payments and granite inventory. *A fortiori*, it is more likely than not that Mr. Nagin and the entities named in the indictment acquired these payments through the illegal transactions alleged in Counts 2 through 6.

Witness testimony and signed, negotiated checks place the amount of money bribes at $112,250.00. The Government's expert financial analyst, Josephine Beninati, offered undisputed testimony that the granite inventory given by Fradella was worth $52,006.24. Mr. Nagin argues that his forfeiture liability for the granite inventory should be reduced to exclude the benefit obtained by other parties involved those transactions.[2] Rec. Doc. 141-1 at 3. By "other parties involved," the Court construes Mr. Nagin to be referring to his sons and the members of Three Fold Consultants,

---

[2] Mr. Nagin incorrectly characterizes his proposed system of apportioning liability as "joint and several." Under the circumstances, "joint and several" would imply that Mr. Nagin is liable for the full extent of the benefit obtained, notwithstanding the involvement of others. Black's Law Dictionary (9th ed. 2009), joint and several. Mr. Nagin's proposed system would be more accurately described as "proportional."

LLC who shared reported ownership interests in Stone Age, LLC, the granite company directly enriched by the granite inventory. *See* Tr. Ex. 162 (Stone Age, LLC Amended Operating Agreement).

In a case dealing with related facts and interpreting the same statute, Judge Fallon ordered that a defendant forfeit only in proportion to his ownership interest in a company that profited from his criminal behavior. *See St. Pierre*, 809 F. Supp. 2d at 545 ("[O]n these facts it is unreasonable and inconsistent with the purpose of forfeiture to require St. Pierre to forfeit funds which he neither directly or indirectly acquired."). In this case, like *St. Pierre*, the Government has arguably failed to carry its burden to show that Mr. Nagin directly or indirectly acquired from the share granite inventory profit that went to his actual[3] business partners. There was little evidence at trial regarding how Stone Age distributed its assets generally and none whatsoever regarding how it spread the value of this granite among the LLC's members. What little bank statements were entered into evidence showed myriad transactions with no obvious connection to Mr. Nagin. *See* Tr. Ex. 301. Moreover, the guilty verdicts on Counts 2 through 6 do not imply that Mr. Nagin accepted or agreed to accept a specific amount. These counts only require Mr. Nagin to have accepted "a thing of value"

---

[3] Even were the Court to reject joint and several liability for this granite inventory, Mr. Nagin would not be allowed to reduce his forfeiture liability by the ownership interest purportedly held by the members of Three Fold at the time the granite inventory was provided. The overwhelming weight of evidence at trial showed that the conveyance to Three Fold acting as BRT investments was a mere artifice to disguise the true, illicit purpose of their $60,000 kickback. The supposed conveyance took place weeks before BRT Investments came into existence. While such pre-formation or "promoter" contracts are not *per se* invalid under Louisiana law, the deciding factor regarding their validity is the intent of the parties. *See Glenn G. Morris & Wendell H. Holmes*, 7 La. Civ. L. Treatise, Business Organizations § 9.03, n.12 (2013 ed.). Mr. Williams and his associate admitted on behalf of BRT that the conveyance was a fraud. Stone Age, for its part, did not update its company filings with the Secretary of State to reflect BRT's member/owner interest. Tr. Ex. 165A. Because BRT's true but unstated cause for paying $60,000 to Stone Age was unlawful and against public policy, the entire agreement is an absolute nullity. La. Civ. Code art. 1968. Under these circumstances, BRT's "interest" in Stone Age cannot be used to offset Mr. Nagin's forfeiture liability.

with respect to the transactions at issue. *See* Rec. Doc. 125 at 8-9.

Nevertheless, Mr. St. Pierre's case is easily distinguishable from this one in that Mr. St. Pierre's business partners were neither alleged nor found to have conspired with him to carry out the criminal violations resulting in forfeiture. *Id.* ("[T]he revenues of those contracts were shared between the defendant as well as unindicted business partners and employees not alleged to be criminally liable as co-conspirators."). In this case, by virtue of the guilty verdict on Count 1, the Government has established that Mr. Nagin's partners in Stone Age were his co-conspirators in a single conspiracy that embraced these granite kickbacks, even assuming that these partners were not involved in acquiring the granite specifically. *See* Rec. Doc. 1 at 8. The general rule is that a defendant will be jointly and severally liable with his co-conspirators for the full amount of the proceeds of a conspiracy. *See Olguin*, 643 F.3d at 395-96 (noting district court's application of joint and several liability to forfeiture question but finding the doctrine unnecessary to justify the outcome); *United States v. Edwards*, 303 F.3d 606, 643 (5th Cir. 2002) (affirming joint and several liability for racketeering conspirator); *St. Pierre*, 809 F. Supp. 2d at 546 (imposing forfeiture liability on defendant for kickbacks paid to a co-conspirator on the basis of joint and several liability doctrine).[4] Thus, at the Government's request, a forfeiture judgment can reflect the full amount of the proceeds attributable to a conspiracy that have not already been forfeited by another member of the conspiracy, subject to limitations for unforeseeable gains. *See United States v. Hurley*, 63 F.3d 1, 23 (1st Cir. 1995) ("The government can collect its $136 million only once but, subject to that cap, it can collect from any appellant so much of that amount as was foreseeable to that appellant.").

---

[4]Taken together and read in light of one another, 18 U.S.C. §§ 981(a)(1)(C) and (a)(2)(B) authorize forfeiture of property as long as it has been "acquired" by someone through an illegal transaction and is "traceable to" that violation of law that rendered the transaction illegal. The breadth of this language is consistent with joint and several liability.

Neither prior forfeiture nor foreseeability are issues in this case.

Under the circumstances, the Court could only limit Mr. Nagin's forfeiture liability for the granite inventory based on his co-owners' interests in Stone Age by finding, contrary to the jury's verdict, that these co-owners were not a part of the conspiracy to illegally acquire the granite in the first place. Such a finding would be warranted if the evidence showed, for instance, that the co-owners were only co-conspirators in a different criminal conspiracy that was misjoined in Count 1. At this point in the proceedings, such an argument is tantamount to a claim of insufficient evidence. Mr. Nagin would have to show that "the evidence and all reasonable inferences, examined in the light most favorable to the government, would preclude reasonable jurors from finding a single conspiracy [involving both his Stone Age business partners and the granite inventory] beyond a reasonable doubt." *United States v. Mitchell*, 484 F.3d 762, 770 (5th Cir. 2007). In other words, he would have to show that the evidence presented failed to link himself, Mr. Fradella, and his Stone Age co-owners in a common unlawful purpose related to the granite inventory. That argument is Mr. Nagin's to make in the first instance. Because Mr. Nagin has not done so, the Court will order forfeiture for the total $52,006.24 value of the granite.

### 2. Counts 8 through 16

Counts 8 through 16 of the indictment pertain to nine bribery/kickback payments that Frank Fradella transmitted to Mr. Nagin via interstate wires. The Government submitted documents proving that these nine payments amounted to $112,500. *See* Tr. Ex. 94, 95, 95A, 96, & C-8. Mr. Nagin does not dispute that the evidence presented crosses the preponderance threshold. $112,500 will be added to the preliminary order of forfeiture.

### 3. Count 1

Mr. Nagin's conviction under Count 1 implies the forfeiture liability that the Court has

already recognized under Counts 2 through 6 and 8 through 16. In addition, the conspiracy described in Count 1 included overt acts of bribery not charged as completed crimes in the remaining counts, to wit, (1) the acquisition of a semi-exclusive Home Depot vendor status by Stone Age, LLC, in exchange for Mr. Nagin weighing in against a proposed community benefits agreement with the retailer; and (2) the acquisition of the following gifts in exchange for the favorable exercise of Mr. Nagin's influence over municipal contracting: a trip to Jamaica, cellular telephone service, a 50th birthday party, lawn care services, an airfare upgrade on a trip to Chicago, a private chartered flight to New York, and a private chartered flight to Chicago, and a private chartered flight to Las Vegas. The Government's expert witness, Ms. Beninati, valued these gifts and benefits at $224,444.40. *See* Ex. C-11.

Mr. Nagin does not dispute these calculations but argues that he should only be liable for his ownership share of Stone Age's Home Depot vendor status. That argument, like the one that the Court has already addressed regarding the granite inventory, is currently barred by the jury's verdict on Count 1 of the indictment. Mr. Nagin offers no other basis for reducing his forfeiture liability. Therefore, the Court will add $224,444.40 to the forfeiture amount, bringing the total to six cents more than the $501,200.56 requested in the Government's motion.[5]

B. Count 17

Finally, in light of the jury's verdict of guilt as to Count 17, Mr. Nagin is liable to forfeit any property "involved in" the violation of §1956(h) set forth in that count. 18 U.S.C. § 982(a)(1). The Government's proof of the money laundering conspiracy charged in Count 17 consisted of evidence

---

[5] The actual total is $501,200.62. However, the Government has the option to request less than the amount of forfeiture justified by the evidence. The Court sees no reason to impose forfeiture above that which the Government has requested in this case.

that Mr. Nagin had transferred from one account to another or withdrawn funds from four of the wire transfers identified in Counts 1 and 8 through 16 and from the illegal kickback set forth in Counts 1 and 2. *See* Tr. Exs. 301 & C10. The amounts that Mr. Nagin transferred or withdrew have already been factored into the forfeiture analysis above. To the extent that § 982(a)(1) authorizes additional forfeiture, the Government has declined the opportunity to present additional evidence or to argue that additional forfeiture is warranted or required under the circumstances. Rec. Doc. 139-1 at 8 n.13. The preliminary order of forfeiture will therefore reflect no additional amount specifically attributable to Count 17.

## V. Conclusion

The Court finds that the Government has carried its burden to show a nexus between the counts of Mr. Nagin's conviction and the $501,200.56 sought in its Motion for Entry of Preliminary Order of Forfeiture. Rec. Doc. 139. This amount reflects and is explained by the following itemization of proceeds acquired from and property involved in Mr. Nagin's criminal violations:

| Description | Count | Amount |
| --- | --- | --- |
| Money from Frank Fradella and/or Michael McGrath | Counts 1, 5, 8-16, & 17 | $162,500.00 |
| Money from Three Fold Consultants and/or Rodney Williams | Counts 1, 2, 3, & 17 | $62,250.00 |
| Trip to Jamaica from Mark St. Pierre | Count 1 | $6,531.85 |
| Cellular Phone Service from Mark St. Pierre | Count 1 | $8,275.25 |
| 50th Birthday Party from Mark St. Pierre | Count 1 | $1,080.00 |

| Lawn Care from Mark St. Pierre | Count 1 | $1,300.00 |
| Airfare Upgrade to Chicago | Count 1 | $522.00 |
| Charter Flight to New York from George Solomon | Count 1 | $23,520.00 |
| Charter Flight to Chicago and Las Vegas from Frank Fradella | Count 1 | $12,925.72 |
| Granite Inventory from Frank Fradella | Counts 1, 4, & 6 | $52,006.24 |
| Vendor Status from Home Depot | Count 1 | $170,289.50 |

Accordingly,

IT IS ORDERED that the United States of America's Motion for Entry of Preliminary Order of Forfeiture is GRANTED. Rec. Doc. 139.

IT IS FURTHER ORDERED that the Defendant, C. Ray Nagin, shall forfeit to the United States the sum of Five Hundred and One Thousand, Two Hundred Dollars and Sixty-Two Cents ($501,200.56) pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C) and 982(a).

IT IS FURTHER ORDERED that pursuant to Federal Rule of Criminal Procedure 32.2(b)(4), this Preliminary Order of Forfeiture shall become final upon imposition of sentence on the Defendant, C. Ray Nagin.

IT IS FURTHER ORDERED that because the forfeiture consists of a money judgment against the Defendant, C. Ray Nagin, no ancillary proceedings will follow. Fed. R. Crim. P. 32.2(c)(1).

IT IS FURTHER ORDERED that the United States District Court shall retain jurisdiction for the purposes of enforcing this order.

New Orleans, Louisiana, this 27th day of May, 2014.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE