UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 13-11** |
| **RAY NAGIN** | **SECTION: "H"** |

### ORDER AND REASONS

Before the Court are Defendant Ray Nagin's Petition for Relief under 28 U.S.C. § 2255 (Doc. 224) and Motion to Expand the Record (Doc. 225). For the following reasons, the Motion to Expand the Record is **GRANTED**, and the § 2255 Petition is **DENIED**.

### BACKGROUND

The Government in 2013 charged Defendant Ray Nagin, New Orleans' former mayor, with conspiracy, bribery, honest services wire fraud, and filing false tax returns. The charges stemmed from Nagin's solicitation and acceptance of bribes from people seeking favorable treatment from the city of New Orleans during Nagin's tenure as mayor from 2002 until 2010. A roughly two-week jury trial on the charges began before Judge Helen Ginger Berrigan on January 27, 2014. Following closing arguments, Judge Berrigan charged the jury. Nagin did not object to Judge Berrigan's jury instructions.[1]

---

[1] *See* Doc. 201 (transcript of jury charge proceedings).

1

The jury convicted Nagin on 20 of the 21 counts he faced in his Indictment. Specifically, the jury convicted Nagin on Count 1 (conspiracy), Counts 2 through 6 (bribery), Counts 8 through 16 (honest services wire fraud), and Counts 17 through 21 (filing false tax returns).[2] The Sentencing Guidelines suggested that Nagin should be sentenced to a term between 188 and 235 months in prison. Judge Berrigan granted Nagin a downward variance from the Guidelines and sentenced him to 120 months imprisonment. The Court also ordered Nagin to pay more than $500,000 in the form of a personal money judgment and more than $80,000 in restitution for unpaid taxes.

Nagin timely appealed several aspects of his conviction and sentence to the Fifth Circuit. He first argued that the Court improperly instructed the jury regarding the honest services wire fraud charges. Specifically, he argued that the Court's instruction that "it's not a defense to claim that a public official would have lawfully performed the official action in question" violated the Supreme Court's decision in *Skilling v. United States*, 561 U.S. 358 (2010).[3] Nagin also raised issues related to the personal money judgment. The Fifth Circuit, however, rejected Nagin's arguments and affirmed Nagin's conviction and sentence.[4]

Nagin then timely filed a petition for writ of certiorari with the Supreme Court.[5] In his petition, Nagin again challenged Judge Berrigan's jury instruction regarding honest services wire fraud. He urged the court at a minimum to delay addressing his petition until it decided *McDonnell v. United States*, a case that raised constitutional issues regarding jury instructions for

---

[2] The jury acquitted Nagin on Count 7, a bribery charge.
[3] Doc. 201 at 12–13 (transcript of jury instructions).
[4] *See* United States v. Nagin, 810 F.3d 348 (5th Cir. 2016).
[5] *See* Doc. 230-1.

2

honest services wire fraud charges.[6] The Supreme Court issued its decision in *McDonnell* on June 27, 2016.[7] Several months later, the Supreme Court denied Nagin's petition.[8]

Nagin now seeks to collaterally attack his conviction and sentence pursuant to 28 U.S.C. § 2255 on three grounds. First, Nagin argues that he is "actually innocent" of the conspiracy, bribery, and honest services wire fraud convictions in light of the Supreme Court's decision in *McDonnell*. Second, he argues that the Government withheld impeachment evidence in violation of *Giglio v. United States* regarding Frank Fradella, a Government witness during Nagin's trial who paid bribes to Nagin to secure contracts with the city of New Orleans.[9] And third, Nagin argues that he was denied effective assistance of counsel guaranteed by the Sixth Amendment "due to prosecutorial misconduct and the conflict of interest which arose from the prosecution's threat" to a member of Nagin's trial counsel, Robert Jenkins.[10]

Nagin filed concurrently with his § 2255 Petition a Motion to Expand the Record in this matter to include a declaration by Nagin and several records relating to criminal proceedings against Fradella in Florida.[11]

The Government opposes Nagin's Petition and his Motion to Expand the Record.[12] First, the Government argues that Nagin's Petition is untimely. Second, the Government argues that Nagin's challenge to his conspiracy,

---

[6] *See* Doc. 230-1 at 28–29.
[7] McDonnell v. United States, 136 S. Ct. 2355 (2016).
[8] Nagin v. United States, 137 S. Ct. 41, 42 (2016).
[9] *See* Giglio v. United States, 405 U.S. 150 (1972).
[10] *See* Doc. 224-1 at 24.
[11] *See* Doc. 225.
[12] Although the Government noted in its Opposition to Nagin's Petition that certain portions of the Opposition should also be considered as a response to Nagin's Motion to Expand the Record, nothing in the Government's brief directly addresses Nagin's Motion. *See* Doc. 230 at 1 n.1, 19 n.18.

bribery, and honest services wire fraud convictions in light of *McDonnell* is procedurally defaulted. Finally, the Government argues that Nagin's prosecutorial misconduct and ineffective assistance of counsel claims are meritless.

## LEGAL STANDARD

28 U.S.C. § 2255(a) provides a prisoner four grounds upon which he may seek relief from his sentence: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack."[13] If a court finds that any of the four grounds exist, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[14] Nevertheless, "[r]elief under § 2255 is 'reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'"[15] "A district court may deny a § 2255 motion without conducting any type of evidentiary hearing if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"[16]

---

[13] 28 U.S.C. § 2255(a).
[14] *Id.* § 2255(b).
[15] United States v. Casby, No. 11-0130, 2018 WL 6602088, at *2 (E.D. La. Dec. 17, 2018) (Fallon, J.) (quoting United States v. Acklen, 47 F.3d 739, 741 (5th Cir. 1995)).
[16] United States v. Jauregui, No. 13-67, 2018 WL 321708, at *2 (E.D. La. Jan. 8, 2018) (Zainey, J.) (quoting U.S. v. Arguellas, 78 Fed. Appx. 984, 986 (5th Cir. 2003)).

# LAW AND ANALYSIS

## I. Nagin's Petition is timely

Rule 3(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Nagin timely filed his original § 2255 petition in October 2017. Nevertheless, because the filing was not in the proper form, the Court issued a deficiency notice and ordered Nagin to cure the deficiency by November 3, 2017. The Court subsequently continued that deadline until December 6, 2017 after discovering that the deficiency notice was not properly forwarded to him.

A stamp on the envelope that contained Nagin's amended Petition indicates that his Petition was received by the mail room in the prison where Nagin is incarcerated on December 6, 2017.[17] Thus, even though the envelope is post-marked December 8, 2017, the Petition was timely filed according to Rule 3(d) of the applicable federal rules.[18]

The Government also argues that Nagin's amended Petition is untimely on the ground that he impermissibly altered the scope of his claims from his original petition to the amended Petition. The latest date that Nagin could

---

[17] *See* Doc. 224 at 14.
[18] Nagin also attached to his Petition a declaration pursuant to 28 U.S.C. § 1746 stating that he deposited his Petition with the mail on room on December 6, 2017, and that first-class postage for the Petition had been pre-paid. Doc. 226. Thus, even if the stamp on the envelope does not conclusively prove that Nagin timely delivered his Petition to the prison's mail room, his declaration is sufficient under Rule 3(d) to make his Petition timely.

5

have filed his original petition was October 3, 2017—a year from the day the Supreme Court denied his petition for certiorari.[19] Because Nagin delivered his original petition to the prison mail room on that day, it was timely filed under Rule 3(d).[20] Just as with amended complaints in civil cases, an amended habeas petition "relates back" for statutes of limitations purposes when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[21] Nevertheless, an amended petition does not relate back—and is thus untimely—if the petition asserts "a new ground for relief supported by facts that differ in both time and type from those the original [petition] set forth."[22]

In his original petition, Nagin sought § 2255 relief on the same three grounds that serve as the basis of his amended Petition.[23] Nevertheless, the Government contends that Nagin's amended Petition "improperly amends and expands the allegations raised in his original petition" in two ways.[24] First, the Government argues that Nagin's amended Petition "expanded his *McDonnell* complaint to include offenses that did not exclusively rely on the use of the term 'official act' to sustain a conviction."[25] Second, the Government argues that the amended Petition "alleged facts and complaints concerning potential defense witnesses not included in [the] original habeas petition."[26]

---

[19] *See* 28 U.S.C. § 2255(f)(1).
[20] *See* Doc. 224-2 at 27.
[21] United States v. Gonzalez, 592 F.3d 675, 679 (5th Cir. 2009) (quoting FED. R. CIV. P. 15(c)(1)(B)).
[22] *Id.* (citing Mayle v. Felix, 545 U.S. 644, 650 (2005)).
[23] *Compare* Doc. 224-2 (original petition) *with* Doc. 224-1 (amended Petition).
[24] Doc. 230 at 21.
[25] *Id.*
[26] *Id.*

6

The Government did not expand on these arguments in its brief. Nor did it refer the Court to specific pages of Nagin's original petition or amended Petition to compare the facts and issues raised in each document. Instead, the Government refers vaguely to "offenses that did not exclusively rely on the use of the term 'official act'" and "alleged facts and complaints . . . not included in [the] original habeas petition."[27] Such facts are insufficient to support the Government's argument that Nagin's amended Petition improperly expanded the facts supporting his original claims.

Nagin argues that his amended Petition actually narrowed the counts of conviction to which he sought relief based on *McDonnell*, and that the allegations regarding defense witnesses merely fleshed out issues and facts he raised in his original petition. This Court agrees. Nagin's amended Petition did not include new grounds for relief that differed in both time and type from those asserted in his original petition. Accordingly, Nagin's amended Petition relates back to October 3, 2017, and thus was timely filed.

## II. Nagin's claim in light of *McDonnell* is procedurally defaulted

A defendant's § 2255 claims are considered "procedurally defaulted" when the claims could have been—but were not—raised on appeal.[28] "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first

---

[27] *See* Doc. 230 at 21.
[28] *See* United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994) ("[A] defendant 'may not raise an issue constitutional or jurisdictional in nature for the first time on collateral review without showing both "cause" for his procedural default, and "actual prejudice" resulting from the error.'") (quoting United States v. Shaid, 937 F.2d 228, 232 (5th Cir. 1991) (en banc)).

7

demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'"[29]

### a. Nagin has not shown cause why his claim in light of *McDonnell* was not raised at trial or on appeal

Failure to object to a jury instruction at trial and a subsequent failure to challenge the instruction on appeal—where the challenge is based on a change in the law—only amounts to sufficient "cause" to overcome procedural default of a § 2255 claim when the change "is so novel that its legal basis was not reasonably available or foreseeable at the time of trial."[30] Here, Nagin has not shown that the interpretation of "official act" as used in 18 U.S.C. § 201(a)(3) by the Supreme Court in *McDonnell* was so novel that the legal basis for challenging the instruction was neither reasonably available nor foreseeable at trial or on appeal.

To begin with, *McDonnell* was decided several months *before* the Supreme Court denied Nagin's petition for writ of certiorari, indicating that the Court considered its decision in *McDonnell* when denying Nagin's writ. Additionally, at the time Nagin filed his appellate brief with the Fifth Circuit on April 14, 2015, more than a month had passed since the defendant in *McDonnell* had filed his own brief before the Fourth Circuit making the argument that the Supreme Court eventually accepted and that Nagin attempts to make now.[31] Clearly the legal basis for Nagin's argument was not unforeseeable at the time of Nagin's appeal if another defendant made the

---

[29] Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted).
[30] United States v. Shaid, 937 F.2d 228, 231 n.5 (5th Cir. 1991) (citing Reed v. Ross, 468 U.S. 1, 16 (1984)).
[31] *See* UNITED STATES OF AMERICA, Plaintiff-Appellee, v. Robert F. McDONNELL, Defendant-Appellant., 2015 WL 881068 (C.A.4). In fact, the defendant in *McDonnell* actually challenged the relevant jury instruction at the district court. *See* United States v. McDonnell, 64 F. Supp. 3d 783, 792 (E.D. Va. 2014).

8

exact same argument before Nagin filed his appellate brief. As such, Nagin cannot show cause why his claim based on *McDonnell* should be considered even though it is procedurally defaulted.

### b. Nagin has not shown that *McDonnell* has rendered him actually innocent of conspiracy, bribery, or honest services wire fraud

To establish "actual innocence" sufficient to overcome a procedural default to a § 2255 claim, a petitioner must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."[32] "'Actual innocence' means factual innocence, not mere legal insufficiency."[33] "This standard imposes a heavy burden on a petitioner."[34] Here, Nagin has not overcome this heavy burden.

As an initial matter, *McDonnell* is inapplicable to and distinguishable from Nagin's case in several respects. First, *McDonnell* involved the interpretation of "official act" as used in 18 U.S.C § 201(a)(3), a statute that prohibits bribery of public officials and witnesses.[35] Nagin was charged and convicted of Theft or Bribery Concerning Program Receiving Federal Funds under 18 U.S.C. § 666. The phrase "official act" appears nowhere in that statute.[36] In fact, the phrase "official act" does not appear in the text of any of the statutes under which Nagin was charged or convicted.[37]

---

[32] Bousley v. United States, 523 U.S. 614, 623 (1998) (internal quotations omitted).
[33] *Id.*
[34] United States v. Torres, 163 F.3d 909, 912 (5th Cir. 1999).
[35] *See McDonnell*, 136 S. Ct. at 2365.
[36] *See* 18 U.S.C. § 666.
[37] *See* 18 U.S.C. 371 (prohibiting conspiracy); 18 U.S.C. § 666 (prohibiting theft or bribery concerning programs receiving federal funds); 18 U.S.C. § 1343 (prohibiting fraud by wire, radio, or television); 18 U.S.C. § 1957 (prohibiting engaging in monetary transactions in property derived from specific unlawful activity); 18 U.S.C. § 1956(h) (prohibiting conspiracies involving conduct covered by § 1957); and 26 U.S.C. § 7206(1) (prohibiting fraud and false statements on tax returns).

The statutory definition of "official act" did, however, appear in the jury instructions related to the honest services wire fraud charges that Nagin faced.[38] After listing the elements required for a conviction under 18 U.S.C. § 1343, the Court instructed the jury that "[p]ublic bribery occurs when a public official accepts or offers to accept, directly or indirectly, anything of apparent present or prospective value, and does so in return for being influenced in his performance of an *official act*."[39] The Court then defined "official act" using the language from 18 U.S.C. 201(a)(3), stating: "[t]he term 'official act' means any decision or action on any matter, question, cause, suit, proceeding, or controversy, which at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust."[40]

It is not clear to this Court exactly why the definition of "official act" was included in the jury instructions related to the counts charging Nagin with wire fraud. In *McDonnell*, "[t]he parties agreed that they would define honest services fraud with reference to the federal bribery statute, 18 U.S.C. § 201."[41] It is not clear whether such an agreement was reached in this case. In any event, the instruction given by this Court was not the same as the one given by the district court in *McDonnell*. In that case, the district court expanded on the statutory definition of bribery and instructed the jury that the term "encompassed 'acts that a public official customarily performs,' including acts 'in furtherance of longer-term goals' or 'in a series of steps to exercise influence

---

[38] *See* Doc. 201 at 115–16.
[39] *Id.* at 115 (emphasis added).
[40] *Id.* at 115–16. *See* 18 U.S.C. § 201(a)(3) (providing that "the term 'official act' means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit").
[41] *McDonnell*, 136 S. Ct. at 2365.

or achieve an end.'"[42] This expanded definition of "official act" was among the chief concerns recognized by the Supreme Court in *McDonnell*.[43] Because this Court defined "official act" using the same language enumerated in 18 U.S.C. § 201—nothing more, nothing less—it does not appear to this Court that such an instruction raises the same concerns as those identified in *McDonnell*. Thus, *McDonnell* did not affect any aspect of Nagin's conviction. Because his claim of actual innocence rests entirely upon *McDonnell*, Nagin has fallen far short of the high bar required to prove actual innocence in the § 2255 context.

## III. Nagin's *Giglio* claims

The Supreme Court in *Giglio v. United States* established that prosecutors have a constitutional duty to disclose evidence affecting a witness's credibility.[44] To establish a *Giglio* claim, a defendant must first show that the prosecution actually suppressed evidence that could have affected a witness's credibility.[45] As a threshold matter, "[t]he Government cannot suppress evidence that does not exist at the time of [a defendant's] trial."[46]

> Nagin alleges that,
>
> Upon belief and information the prosecution failed to disclose evidence which Mr. Nagin could have used to impeach their star witness, Mr. Frank Fradella. On belief and information, Mr. Fradella was the subject of numerous lawsuits and multiple criminal prosecutions before and during Mr. Nagin's trial. Evidence of these matters was not provide [sic] to Mr. Nagin, depriving him of the ability to impeach Mr. Fradella during his trial.

---

[42] *Id.* at 2366 (quoting the district court's jury instructions).
[43] *See id.* at 2367–68.
[44] *See* Giglio v. United States, 405 U.S. 150, 154 (1972).
[45] *See* Mahler v. Kaylo, 537 F.3d 494, 500 (5th Cir. 2008).
[46] United States v. Sanchez, 251 F.3d 598, 603 (7th Cir. 2001). *See In re* Coleman, 344 F. App'x 913, 916 (5th Cir. 2009) ("[T]here is no due process violation if a prosecutor is not aware of the existence of favorable evidence.").

> . . .
>
> On belief an information, prior to and during Mr. Nagin's trial, the prosecution may have had additional favorable evidence based on what it knew about the development of the investigation — a law enforcement sting targeting Fradella — which led to Mr. Fradella's current prosecution in Florida, which it chose not to disclose to Mr. Nagin.[47]

As shown by the documents that Nagin attached to his Motion to Expand the Record, the conduct underlying Fradella's criminal trouble in Florida did not even begin until October 2014—months after Nagin's trial, conviction, and sentencing.[48] The Government could not have disclosed evidence of alleged criminal activity involving Fradella that did not even begin until after Nagin's trial and sentencing.

Further, to the extent Nagin raises a *Giglio* challenge based on evidence of wrongdoing by Fradella that allegedly occurred before Nagin's trial, such a challenge is meritless. Evidence of Fradella's former felony convictions and of his plea agreement regarding criminal charges connected to Nagin were used to impeach him at trial.[49] Accordingly, even if Nagin could somehow show that the Government withheld impeachment evidence regarding Fradella, Nagin's *Giglio* claim on this ground would fail because the evidence would have been merely cumulative. Such evidence would not create a reasonable probability that the jury would not have convicted him.[50] As such, Nagin's *Giglio* claims must fail.

---

[47] Doc. 224-1 at 21–23.
[48] *See* Doc. 225-1.
[49] *See* Doc. 197 at 27–30.
[50] *See* United States v. Hughes, 230 F.3d 815, 819 (5th Cir. 2000) ("The defendant has the burden to establish a reasonable probability that the evidence would have changed the result.").

## IV. Nagin's ineffective assistance of counsel claim fails

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding," which includes during trial.[51] Nevertheless, "the right to counsel does not guarantee error-free counsel."[52]

The Supreme Court in *Strickland v. Washington* established a two-part test to determine when a defendant's right to effective assistance of counsel has been violated.[53] "To demonstrate that counsel was constitutionally ineffective, a defendant must show that [1] counsel's representation 'fell below an objective standard of reasonableness' *and* [2] that he was prejudiced as a result."[54]

"When evaluating the first *Strickland* criterion, [the Court] 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[55] Courts "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"[56] Overall, "judicial scrutiny of counsel's performance must be highly deferential."[57]

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

---

[51] Lafler v. Cooper, 566 U.S. 156, 165 (2012) (internal citations omitted).
[52] United States v. Freeman, 818 F.3d 175, 178 (5th Cir. 2016).
[53] Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984)
[54] Lee v. United States, 137 S. Ct. 1958, 1964 (2017) (quoting *Strickland*, 466 U.S. at 688) (emphasis added).
[55] United States v. Fields, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).
[56] *Id.* at 294 (quoting *Strickland*, 466 U.S. at 689).
[57] *Id.* (quoting *Strickland*, 466 U.S. at 689).

13

of the proceeding would have been different.'"[58] "A failure to establish either deficient performance or resulting prejudice defeats the [defendant's] claim."[59]

Nagin argues that his trial counsel engaged in constitutionally deficient representation through the following conduct: (1) "relying on the prosecutors' representations concerning their *Brady* and related disclosure obligations;" (2) "failing to make more specific disclosure requests and failing to move the court to referee any disputes and to review any withholdings for appropriateness;" (3) "failing to bring the prosecution's threat to [Robert Jenkins, a member of Nagin's trial counsel] to the attention of the court, and allowing that threat to alter the course of Mr. Nagin's defense;" (4) "failing to bring the prosecution's defense witness intimidation tactics to the attention of the court;" and (5) "failing to adequate (sic) prepare Mr. Nagin to take the stand."[60] The Court will address each claim in turn.

### a. Alleged reliance on prosecutors' representations regarding *Brady* disclosures

The only evidence that Nagin alleges was withheld by prosecutors is evidence of wrongdoing by Frank Fradella that could have been used to impeach him at trial.[61] Even assuming the Government withheld such evidence, and that it was objectively unreasonable for Nagin's trial counsel to rely on the Government's representations regarding such evidence, Nagin cannot show prejudice on this ground. As this Court has already noted, evidence of Fradella's past criminal trouble and of his cooperation with prosecutors was in fact introduced in an effort to impeach him at Nagin's trial.

---

[58] *Lafler*, 566 U.S. at (2012) (quoting *Strickland*, 466 U.S. at 694).
[59] United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 697).
[60] *See* Doc. 224-1 at 25–26.
[61] *Id.* at 26.

14

Accordingly, any additional evidence of Fradella's past wrongdoing would have been merely cumulative, and Nagin cannot show that the result of the trial would have been different.

### b. Alleged failure to make more specific disclosure requests and failure to involve the Court in any alleged dispute involving disclosures

Although Nagin alleges that his counsel should have made "more specific disclosure requests" and that his lawyers failed to ask the Court to resolve disclosure disputes between them and prosecutors, Nagin fails to identify what disclosure requests should have been made or that a disclosure dispute actually arose between his attorneys and the Government. Accordingly, he has failed to make allegations that even suggest his trial counsel acted unreasonably in this regard. Further, he has not suggested how this prejudiced him at trial other than his general contention that he was denied a fair trial. Accordingly, this challenge is meritless.

### c. Alleged failure to notify the Court of a threat to Nagin's trial counsel

Nagin says in his declaration that after Robert Jenkins cross-examined one of the Government's witnesses at trial, a prosecutor made the following comment to Jenkins during a recess: "you were pretty hard on my FBI witness related to Nagin's taxes, so just how are your taxes"?[62] Nagin argues that this alleged threat by a prosecutor created an actual conflict of interest between Nagin and Jenkins resulting in a violation Nagin's Sixth Amendment right to effective counsel.

---

[62] Doc. 225-1 at 2.

"A defendant's right to effective assistance of counsel includes the right to representation free from a conflict of interest."[63] Nevertheless, as with any ineffective assistance claim, Nagin must show that the alleged conflict prejudiced him.[64] Here, Nagin has failed to do so.

Nagin argues that the alleged threat caused Jenkins "to lose focus, become less aggressive, and deviate from the closing argument which Jenkins had prepared with the assistance of co-counsel."[65] Such allegations—even if true—are insufficient to show that the result of Nagin's trial would have been different. Just because a lawyer deviates from a planned course of argument does not mean that the lawyer's behavior "adversely affected" his client.[66] Nor do allegations that Jenkins lost focus and became less aggressive show that Nagin was adversely affected. Accordingly, this claim must fail.

### d. Alleged failure to bring the prosecution's witness intimidation tactics to the Court's attention

Nagin says in his declaration that Jenkins told him several of Nagin's witnesses became unwilling to testify after prosecutors visited the potential witnesses.[67] He now argues that Jenkins' alleged failure to notify the Court about the alleged witness intimidation violated his Sixth Amendment right to effective counsel.

The Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the

---

[63] United States v. Greig, 967 F.2d 1018, 1021 (5th Cir. 1992).
[64] *See* United States v. Wallace, 250 F.3d 738 (5th Cir. 2001) ("Even assuming that an actual conflict of interest existed here, we find that Wallace failed to demonstrate any specific way in which the conflict adversely affected his counsel's performance in either case.").
[65] Doc. 233 at 9.
[66] *See* Mickens v. Taylor, 535 U.S. 162, 174 (2002) (holding that a petitioner must "establish that the conflict of interest adversely affected his counsel's performance" to succeed on an ineffective assistance claim on conflict grounds).
[67]     Doc. 225-1 at 3–4.

16

presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."[68] "Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."[69]

Here, Nagin identifies four people as uncalled witnesses that were allegedly intimidated by the Government.[70] What Nagin has failed to do, however, is describe what these witnesses would have said and how it would have been favorable to any particular defense he sought to raise. Accordingly, his claim on this ground is foreclosed by clear Fifth Circuit precedent.[71]

### e. Alleged failure to prepare Nagin to take the witness stand in his own defense

Finally, Nagins says that his counsel "did not prepare [him] to take the stand," and that his only discussion about the matter with his attorney involved Jenkins "stating that it was most likely that [Nagin] would need to testify."[72] In a conclusory fashion, Nagin argues that "in failing to adequately prepare Mr. Nagin to take the stand, counsel increased the likelihood that his client would be convicted, not because he was guilty, but simply because he was unprepared."[73] Even assuming such conduct is unreasonable under *Strickland*, Nagin fails to specify what he did or did not say on the stand that

---

[68] Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009).
[69] *Id.*
[70] *See* Doc. 225-1 at 3–4.
[71] *See Day*, 566 F.3d at 538.
[72] Doc. 225-1 at 2.
[73] Doc. 224-1 at 27.

17

would have changed the outcome of his trial. Without more specific allegations, Nagin has failed to show prejudice sufficient to support this claim.

Ultimately, Nagin's trial team—including Jenkins—introduced exhibits, called witnesses, cross-examined Government witnesses, and delivered compelling arguments throughout a trial that lasted more than a week. Despite these efforts, the jury convicted Nagin on numerous counts in the face of an abundance of evidence suggesting he was guilty as charged. Even assuming Nagin's allegations regarding ineffective assistance to be true, he has failed to specify how any of the alleged ineffective assistance prejudiced him in a way that would have resulted in a different outcome at trial. Accordingly, his ineffective assistance claims must fail.

## CONCLUSION

For the foregoing reasons, Nagin's Motion to Expand the Record is **GRANTED**. Nevertheless, the Court finds that the records of this case conclusively show that Petitioner Nagin is entitled to no relief. Accordingly, the Court need not hold an evidentiary hearing, and Nagin's § 2255 Petition is **DENIED**.

New Orleans, Louisiana this 15th day of July, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**