**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 13-11** |
| **v.** | * | **SECTION: "H" (5)** |
| **C. RAY NAGIN** | * | |
| | * * * | |

**UNITED STATES' RESPONSE TO DEFENDANT'S *PRO SE* MOTION TO HAVE**
**PROPERTY RETURNED AND TO HAVE HIS RIGHTS RESTORED**

**NOW INTO COURT**, comes the United States of America, by and through the undersigned Assistant United States Attorney, who respectfully submits this response to the defendant's motion to have his passport returned and to have his voting and firearms rights restored. *See* Rec. Doc. No. 257 (Defendant's *Pro Se* Motion for Relief).

**I.**

**RESTORATION OF FEDERAL GUN RIGHTS**

*Overview of the Statutory Framework*

The Gun Control Act of 1968 makes it unlawful for any person convicted of a crime punishable by imprisonment for more than one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition. 18 U.S.C. § 922(g)(1). The Gun Control Act "also established a statutory framework under which a felon could seek relief from the Federal firearms disability." *United States v. McGill*, 74 F.3d 64, 66 (5th Cir. 1996), *cert. denied*, 519 U.S. 821 (1996); 18 U.S.C. § 925(c) (Exceptions: Relief from Disabilities). The statute permits convicted felons to petition the Attorney General for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms. The framework allows the Attorney General

to grant relief if the felon establishes (to the Attorney General's satisfaction) that the "circumstances regarding the disability, and the applicant's record and reputation, [were] such that the applicant [was] not likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." *See* 18 U.S.C. § 925(c);[1] *Black v. Snow*, 272 F. Supp. 2d 21, 23 (D.D.C. 2003).

### Restoration Authority Rests with the Director of the ATF

However, by regulation, the Attorney General delegated the authority to consider § 925(c) petitions to the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and "adopted detailed regulations to govern the requirements an applicant must meet" to remove a felon's firearms restrictions. *See McGill*, 74 F.3d at 66; 27 C.F.R. § 178.144 (Relief from Disabilities under the Act);[2] 28 C.F.R. § 0.130(a)(1) (General Functions).[3]

---

[1] 18 U.S.C. § 925(c) provides in pertinent part:

> (c) A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Attorney General for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Attorney General may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. Any person whose application for relief from disabilities is denied by the Attorney General may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice. . . .

[2] This regulation directs the applicant to petition the Director of the ATF and details the specifics related to the application process. *See* 27 C.F.R. § 178.144.

[3] 28 C.F.R. § 0.130(a)(1) (General Functions) provides in pertinent part:

> Subject to the direction of the Attorney General and the Deputy Attorney General, the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives shall:

Section 925(c) (and 27 C.F.R. § 178.144) require an "applicant, as a first step, to petition the [Director of the ATF], and establish to the [Director's] satisfaction that the applicant is eligible for relief." *United States v. Bean*, 537 U.S. 71, 76 (2002). To satisfy the regulations, ATF is required to "conduct a broad-based field investigation of the convicted applicant's record and reputation before ruling on [any] application." *McGill*, 74 F.3d at 66 (5th Cir. 1996) (citing *Smith v. Brady*, 813 F. Supp. 1382, 1383-84 (E.D. Wis. 1993)). And the Director has the discretion to grant or deny the request based on the broad range of considerations referenced above.[4]

*Congress Suspended the Statute by Withholding Funds to Act on § 925(c) Applications*

However, since 1992, Congress has prevented the ATF from using appropriated funds to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. § 925(c). *Bean*, 537 U.S. at 74-75 and *McGill*, 74 F.3d at 67 (citing Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub. L. No. 102-393, 106 Stat. 1729 (1992)). This funding limitation and appropriations bar exists today. *See* Bureau of Alcohol, Tobacco, Firearms and Explosive, and Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, 138

---

(a) Investigate, administer, and enforce the laws related to alcohol, tobacco, firearms, explosives, and arson, and perform other duties as assigned by the Attorney General, including exercising the functions and powers of the Attorney General under the following provisions of law:

    (1) 18 U.S.C. chapters 40 (related to explosives), 44 (related to firearms), 59 (related to liquor trafficking), and 114 (related to trafficking in contraband cigarettes);

* * *

[4] And a district court can <u>only</u> reverse the agency's actual adverse decision if the denial was arbitrary, capricious or an abuse of discretion. *McGill*, 74 F.3d at 66 (citing *Bradley v. Bureau of Alcohol, Tobacco and Firearms*, 736 F.2d 1238, 1240 (8th Cir. 1984)) (emphasis added).

Stat 25 (2024).[5]  And, since "Congress has the power to amend, suspend or repeal a statute by an appropriations bill, as long as it does so clearly," the Fifth Circuit Court of Appeals has concluded that Congress suspended the relief from Federal firearms disabilities for individuals under § 925(c) by barring the appropriations for ATF to act on the provision. *See McGill*, 74 F.3d at 66-68 (citing *Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 440 (1992)) (emphasis added).[6]

*Prior Dispositive Action by the ATF is a Prerequisite to Judicial Review*

"Th[e] broad authority of the [ATF], to grant or deny relief, even when the statutory prerequisites are satisfied, shows that judicial review under § 925(c) cannot occur without a dispositive decision by ATF." *Bean*, 537 U.S. at 77; *McGill*, 74 F.3d at 66. *Only upon an actual denial* by the Director of the ATF, "may an applicant seek review in a district court." *Bean*, 537 U.S. at 76-77; 18 U.S.C. § 925(c).[7]  The "very use in § 925(c) of the word 'review' to describe a

---

[5]  The Bureau of Alcohol, Tobacco, Firearms and Explosive, and Consolidated Appropriations Act, 2024, Pub. L. No. 118-42 (p. 139), 138 Stat 25 (2024) specifies in pertinent part (emphasis added):

> *Provided*, *That none of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under section 925(c) of Title 18, United States Code*: *Provided further*, That such funds shall be available to investigate and act upon applications filed by corporations for relief from Federal firearms disabilities under section 925(c) of Title 18, United States Code. . . .

[6] "There can be no doubt that Congress could suspend or repeal the authorization contained in [a current statute] ...; and it could accomplish its purpose by an amendment to an appropriations bill, or otherwise." *McGill*, 74 F.3d at 68 (quoting *United States v. Dickerson,* 310 U.S. 554 (1940)); *but see Bean v. Bureau of Alcohol, Tobacco and Firearms*, 253 F.3d 234 (5th Cir. 2001), *rev'd*, *United States v. Bean*, 537 U.S. 71 (2002).

[7]  And "[e]ven though § 925(c) allows the district court to admit additional evidence in extraordinary circumstances, the legislative history of this amendment makes it clear that Congress intended for district courts to review only the [ATF's] denial under an arbitrary and capricious standard." *McGill*, 74 F.3d at 66; *see also Bean*, 537 U.S. at 77.

court's responsibility in this statutory scheme signifies that if cannot grant relief on its own, absent an antecedent actual denial by ATF." *Bean*, 537 U.S. at 72.[8]

In summary, "[t]he absence of an actual denial by ATF of a felon's petition precludes judicial review under § 925(c)." *See Bean*, 537 U.S. at 71, 76 (actual decision by ATF on convicted felon's application for relief from firearms disabilities is a prerequisite to judicial review).[9] "Mere inaction by ATF [due to an appropriations bar] does not invest a district court with independent jurisdiction to act on an application" to restore a felon's gun rights. *Bean*, 537 U.S. at 76.[10]

### Argument - Conclusion

The United States respectfully submits that this Court currently lacks the authority to consider Nagin's request to have his gun rights restored. *See Bean*, 537 U.S. at 77-78; *McGill*, 74 F.3d at 68. Absent an actual adverse dispositive decision from the ATF on a petition to remove Federal firearms disabilities, federal courts are without authority to act on such requests. *See Bean*, 537 U.S. at 76-78; *McGill*, 74 F.3d at 68 (Congress did not intend to "transfer the burden and responsibility of investigating an applicant's fitness to possess firearms from the ATF to the

---

[8] In *Bean*, the respondent applied to the ATF for relief from his firearms disabilities in accordance with § 925(c). And "the ATF returned the application unprocessed, explaining that its annual appropriations law forbade it from expending any funds to investigate or act upon the application." *Bean*, 537 U.S. at 72. The Supreme Court held this "inaction did not amount to a 'denial' within the meaning of § 925(c)." *Bean*, 537 U.S. at 75. Therefore, the district court lacked jurisdiction to review ATF's inaction on the application. *Id*. at 76.

[9] "The very use in § 925(c) of the word review to describe a court's responsibility in this statutory scheme signifies that it cannot grant relief on its own, absent an antecedent actual denial by ATF." *Bean*, 537 U.S. at 77-78 (emphasis added) (internal quotations omitted).

[10] However, nothing prevents Nagin from exhausting a potential administrative remedy by filing a petition with the Director of the ATF pursuant to § 925(c) and 27 C.F.R. § 178.144; *but see* https://www.atf.gov/firearms/qa/there-way-prohibited-person-restore-their-right-receive-or-possess-firearms-and.

federal courts" when it withdrew funds for ATF to process applications for individuals under 925(c)). Therefore, Nagin's request to restore his gun rights should be dismissed.[11]

## II.

## RESTORATION OF VOTING RIGHTS

The United States Constitution provides that qualifications for voting in federal elections are determined by state law. *See Arizona v. Inter Tribal Council of Arizona*, *Inc.*, 570 U.S. 1, 16-17 (2013) (the "Elections Clause [of the Constitution] empowers Congress to regulate *how* federal elections are held, *but not* who may vote in them") (citing Article I, § 2, cl. 1 of the U.S. Constitution) (emphasis added). A felon's eligibility to vote is determined by the law of the state in which the felon seeks to vote and not by the federal court that presided over the felony conviction.[12] Therefore, Nagin's request to have his voting rights restored by this Court should be dismissed.

In summary, Nagin should redirect his concerns or questions related to his eligibility to vote to the Secretary of State in his home state of Texas.[13]

---

[11] Furthermore, even if there were an actual denial by ATF, § 925(c) provides that, "[a]ny person whose application for relief from disabilities is denied by the Attorney General may file a petition with the United States district court for the district *in which he resides*." *See* 18 U.S.C. § 925(c) (emphasis added). Because Nagin resides in Texas and not Louisiana, venue is not proper in the Eastern District of Louisiana. *See Von Drake v. United States*, 441 F. Supp. 2d 779, 781-782 (E.D. Tex. 2006).

[12] And it is uncontested that a state may disenfranchise convicted felons. Section 2 of the Fourteenth Amendment of the United States Constitution allows states to revoke voting privileges to anyone engaged in "rebellion, or other crime." *See Richardson v. Ramirez*, 418 U.S. 24, 54 (1974) ("[T]he exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment.").

[13] *See also* https://www.justice.gov/d9/fieldable-panel-panes/basic-panes/attachments/2022/05/19/voting_with_a_criminal_conviction.pdf.

### III.

### <u>RETURN OF THE PASSPORT</u>

The United States is not opposed to the return of the passport Nagin surrendered to the Court in 2013 as a condition of his pretrial release.[14] However, the United States understands that U.S. Probation forwarded Nagin's passport to the U.S. Department of State following his conviction and sentence of imprisonment.[15]

### IV.

### <u>CONCLUSION</u>

Therefore, for the reasons stated herein, the defendant's request for relief should be dismissed.

New Orleans, Louisiana, March 27, 2024.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

 _/s/ Richard R. Pickens, II_____
RICHARD R. PICKENS, II
Louisiana Bar No. 22593
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3022
E-mail: richard.pickens@usdoj.gov

---

[14] And at no point did the U.S. Attorney's Office for the Eastern District of Louisiana possess or take control of Nagin's passport.

[15] The undersigned was informed by U.S. Probation that passports collected prior to trial as a condition of release are routinely forwarded to the U.S. Department of State following conviction and the imposition of a sentence of imprisonment. And, as a side note, passports expire after ten years.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 27, 2024, I e-filed the above pleading and electronically served a copy on *pro se* defendant, C. Ray Nagin, to the e-mail address designated in his motion for relief.


<u>  /s/ Richard R. Pickens, II      </u>
RICHARD R. PICKENS, II
Assistant United States Attorney